Filed 2/11/25  P. v. Debato CA2/7

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| THE PEOPLE, | B335444 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. TA034413) |
| v. | |
| HANEZE L. DEBATO, | |
| Defendant and Appellant. | |

APPEAL from a postjudgment order of the Superior Court of Los Angeles County, Hector E. Gutierrez, Judge.  Affirmed.

John Steinberg, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Scott A. Taryle and Chung L. Mar, Deputy Attorneys General, for Plaintiff and Respondent.

———————————————

Heneze Debato appeals from a postjudgment order denying his Penal Code former section 1170.95 (now § 1172.6)[1] petition with respect to his convictions for one count of first degree murder and three counts of willful, deliberate, and premeditated attempted murder. Debato contends the superior court erred in denying his petition at the prima facie stage because the jury could have convicted him "based upon a theory of imputed malice." We reject his contention and affirm.

## FACTUAL AND PROCEDURAL BACKGROUND[2]

A.  *Evidence at Trial*[3]

"Leuders Park Piru and Elm Lane Piru are Blood street gangs claiming territory within the City of Compton. Blood gang

---

[1]  Undesignated statutory references are to the Penal Code. Effective June 30, 2022, section 1170.95 was renumbered to section 1172.6 with no change in text. (Stats. 2022, ch. 58, § 10.)

[2]  The People filed a request for judicial notice of the clerk's transcript from Debato's direct appeal and portions of Debato's trial transcript. The People argue these records are "relevant to [h]is appeal because [they] explain[] the circumstances and findings related to [Debato's] . . . convictions." Because we reach the same conclusion as the People without considering these records, we deny the People's request as unnecessary.

[3]  We recite facts from the opinion on Debato's direct appeal. (*People v. Debato* (Sept. 3, 1997, B104425) [nonpub. opn.].) We provide a summary of the relevant facts for background purposes only. (See *People v. Flores* (2022) 76 Cal.App.5th 974, 988 ["the factual summary in an appellate opinion is not evidence that may be considered at an evidentiary hearing to determine a petitioner's eligibility for resentencing" under § 1172.6]; *People v.*

members wear red to denote their gang affiliation. Southside and Santana Block are rival Crip street gangs also claiming territory in Compton. An 'O.G.,' or original gangster, member of Elm Lane Piru was killed during the summer of 1995. The Blood gangs suspected a Southside Crip was responsible for the killing. In August 1995, several shootings occurred involving members of the Leuders Park Piru, Elms Lane Piru and the Southside Crips.

"[Debato] is a member of the Leuders Park Piru.

"On the night of August 21, 1995, Donnell Perry, a Santana Crip gang member, was walking in the area of Alondra and Mayo in Compton. Two cars approached—a burgundy Cutlass with a white top followed by a gray Toyota. All of the occupants of both cars were wearing red. Perry recognized [Debato] in the gray car and 'Tricon,' another member of the Leuders Park Piru, in the burgundy Cutlass. The cars made U-turns and drove toward Perry. Perry began to run. [Debato] fired several shots at Perry as he fled. Perry was not hit.

"Perry ran toward Stefan Stokes and Corey Cotton. Perry yelled out a warning that 'Lenders Park Piru was coming and they just shot at me.' Perry ran into some bushes and hid.

"The gray Toyota approached Stokes and Cotton who were standing side by side on the sidewalk. The Toyota stopped about two feet away. [Debato], who was seated in the rear of the vehicle, leaned over and said, 'Check it out, homie.' [Debato] pointed a .380 caliber revolver and began firing in the direction of Stokes and Cotton. Stokes and Cotton ran. They were not hit by the shots.

---

*Lee* (2023) 95 Cal.App.5th 1164, 1183 ["By logical extension, the factual summary also may not be used to determine a petitioner's eligibility at the prima facie stage" under § 1172.6].)

3

"After the shooting the gray car appeared to break down. Its occupants exited the car and fled on foot. Police arrived shortly thereafter. Police made sure no one was hurt and arranged to have the gray car towed away. Neither Perry, Stokes, nor Cotton spoke to police at the scene.

"The next day on August 22, 1995, Perry returned to the scene of the shooting around 9:00 p.m. to meet some friends. He recognized the same burgundy Cutlass with the white top he saw the night before make a U-turn at Alondra and Mayo. Perry walked to the corner of Mayo and Alondra and saw the Burgundy Cutlass make another U-turn in order to drive toward the location where Perry's friend, Maurice Miles, stood. Perry heard shots coming from the location where Miles had been standing. Perry heard as many as ten shots fired from an automatic weapon. Perry ducked into some bushes. The burgundy Cutlass turned the corner past Perry at Alondra and Mayo. From Perry's vantage point he saw two people inside the car. He saw [Debato] sitting in the front passenger seat holding a black semi-automatic 9 millimeter gun on his lap.

"Schemaj Gray, a Front Hood Compton Crip gang member, was standing several feet from Maurice Miles. Gray saw [Debato] and another person drive past. He saw [Debato] lean his upper torso out of the passenger side window and fire several shots at Maurice Miles.

"Gray and Perry ran to Miles' assistance. Miles had been hit several times by the gunfire. Miles' friends took him to the hospital where he died of multiple gunshot wounds.

"Police investigators found several 9 millimeter shell casings and bullet fragments at the scene.

"Several weeks later Perry gave a taped interview to police investigators. At the interview he identified the shooter as 'Haneze from Leuders Park Piru.'" (*People v. Debato, supra*, B104425.)

B.    *Relevant Jury Instructions*

The trial took place in 1996. As relevant here, the trial court instructed the jury with CALJIC Nos. 8.20 (deliberate and premeditated murder), 8.25.1 (drive-by murder), 8.66 (attempted murder), 8.67 (premeditated attempted murder), 3.00 (definition of principals), 3.01 (aiding and abetting), and 17.19 (personal use of a firearm). The court also instructed the jury on the special allegation that Debato discharged a firearm from a vehicle with the intent to inflict great bodily injury or death (§ 12022.55).

CALJIC No. 8.20 provided, in relevant part: "All murder which is perpetrated by any kind of willful, deliberate and premeditated killing with express malice aforethought is murder of the first degree."

Former CALJIC No. 8.25.1 (5th ed., 1994) provided: "Murder which is perpetrated by means of discharging a firearm from a motor vehicle intentionally at another person outside of the vehicle when the perpetrator specifically intended to inflict death, is murder of the first degree."

CALJIC No. 8.66 provided, in relevant part: "In order to prove [the crime of attempted murder,] each of the following elements must be proved[:] [¶] 1. A direct but ineffectual act was done by one person towards killing another human being; and [¶] 2. The person committing such act harbored express malice aforethought, namely, a specific intent to kill unlawfully another human being."

5

CALJIC No. 8.67 provided, in relevant part: "It is also alleged in Counts Two, Three, and Four [(the attempted murder counts)] of the information that the crime attempted was willful, deliberate, and premeditated murder. If you find the defendant guilty of attempt to commit murder, you must determine whether this allegation is true or not true. [¶] [¶] If you find that the attempt to commit murder was preceded and accompanied by a clear, deliberate intent to kill, which was the result of deliberation and premeditation, so that it must have been formed upon pre-existing reflection and not under a sudden heat of passion or other condition precluding the idea of deliberation, it is attempt to commit willful, deliberate, and premeditated murder."

Former CALJIC No. 3.00 (5th ed., 1988) provided: "The persons concerned in the commission or attempted commission of a crime who are regarded by law as principals in the crime thus committed or attempted and equally guilty thereof include: [¶] 1. Those who directly and actively commit or attempt to commit the act constituting the crime, or [¶] 2. Those who aid and abet the commission or attempted commission of the crime."

Former CALJIC No. 3.01 (5th ed., 1988) provided, in relevant part: "A person aids and abets the commission or attempted commission of a crime when he or she, [¶] (1) with knowledge of the unlawful purpose of the perpetrator and [¶] (2) with the intent or purpose of committing, encouraging, or facilitating the commission of the crime, by act or advice aids, promotes, encourages or instigates the commission of the crime."

C.    *Verdicts, Sentence, and Appeal*

The jury found Debato guilty of first degree murder (§ 187, subd. (a), count 1) and three counts of premeditated attempted

6

murder (§§ 664, 187, subd. (a), counts 2-4).  As to count 1, the jury found Debato inflicted great bodily injury and death as a result of discharging a firearm from a vehicle (§ 12022.55), and that he personally used a firearm (§ 12022.5, subd. (a)).  As to counts 2 through 4, the jury found Debato personally used a firearm (§ 12022.5, subd. (a)).  The trial court sentenced Debato to 31 years to life in prison on count 1, consisting of 25 years to life for the first degree murder and six years for the section 12022.55 firearm enhancement.[4]  As to counts 2, 3, and 4, the court imposed concurrent sentences of life imprisonment and imposed, but stayed, four-year sentences for each of the section 12022.5, subdivision (a) firearm enhancements.

On direct appeal, this court concluded it was error for the trial court to fail to instruct the jury that Debato had to "personally" discharge the firearm from the vehicle before the jury could find the section 12022.55 allegation true.  However, we concluded the error was not prejudicial and affirmed the judgment.  (*People v. Debato, supra*, B104425.)

D.     *Section 1172.6 Proceedings*

On December 20, 2022, Debato filed, pro se, a petition for resentencing under former section 1170.95 as to his attempted murder and murder convictions.  The People opposed, and Debato, then represented by counsel, filed a reply.

The superior court denied the petition at the prima facie stage, finding that "[t]he jury was not instructed as to the natural

---

[4]     Based on the limited record before us, it appears the court did not address the section 12022.5, subdivision (a), firearm enhancement as to count 1.  We assume the court imposed and stayed the sentence.

and probable consequences or felony murder.  [Debato] was prosecuted as a principal, either a direct perpetrator or an aider and abettor.  There is nothing in the instructions which would allow the jury to impute malice to [Debato] based solely on his participation in the crimes."  The court noted it did not consider the section 12022.55 allegation "because once the appellate court found that the jury was not properly instructed as to that allegation, [I] must treat it as though it was never proved."  It also noted it did not consider the section 12022.5 allegation "because a personal use finding within the meaning of this code section is not synonymous with personally discharging a firearm causing death."

Debato timely appealed.

## DISCUSSION

A.  *Senate Bill 1437 and Section 1172.6*

Effective 2019, Senate Bill No. 1437 (2017-2018 Reg. Sess.) (SB 1437) eliminated the natural and probable consequences doctrine as a basis for finding a defendant guilty of murder (*People v. Reyes* (2023) 14 Cal.5th 981, 984; *People v. Gentile* (2020) 10 Cal.5th 830, 842-843 (*Gentile*)) and narrowed the felony-murder rule (§§ 188, subd. (a)(3), 189, subd. (e); see *People v. Curiel* (2023) 15 Cal.5th 433, 448-449 (*Curiel*); *People v. Strong* (2022) 13 Cal.5th 698, 707-708; *People v. Lewis* (2021) 11 Cal.5th 952, 957 (*Lewis*)).  Section 188, subdivision (a)(3), now prohibits imputing malice based solely on one's participation in a crime and requires proof of malice to convict a principal of murder, except under the revised felony-murder rule in section 189, subdivision (e).  The latter provision requires the People to prove that the defendant was the actual killer (§ 189, subd. (e)(1)); an

8

aider and abettor to murder who had the intent to kill (*id.*, subd. (e)(2)); or a major participant in an underlying felony listed in section 189, subdivision (a), who acted with reckless indifference to human life as described in subdivision (d) of section 190.2. (§ 189, subd. (e)(3); see *Curiel*, at p. 448; *People v. Wilson* (2023) 14 Cal.5th 839, 868-869; *Strong*, at p. 708; *Gentile*, at pp. 842-843.)  Senate Bill No. 775 (2021-2022 Reg. Sess.) (SB 775) subsequently clarified the amendments to sections 188 and 189 also apply to attempted murder convictions.  (*People v. Coley* (2022) 77 Cal.App.5th 539, 544 (*Coley*).)

SB 1437 also provided a procedure (codified in section 1172.6) for "[a] person convicted of felony murder[,] murder under the natural and probable consequences doctrine or other theory under which malice is imputed to a person based solely on that person's participation in a crime, [or] attempted murder under the natural and probable consequences doctrine" to petition the superior court to vacate the convictions and be resentenced on any remaining counts if the petitioner could not now be convicted of murder or attempted murder because of the changes to sections 188 and 189.  (§ 1172.6, subd. (a).)

If a section 1172.6 petition contains all the required information, the sentencing court must appoint counsel to represent the petitioner if requested.  (§ 1172.6, subd. (b)(1)(A), (3); see also *Lewis*, *supra*, 11 Cal.5th at pp. 962-963.)  The prosecutor must then file a response to the petition, the petitioner may file a reply, and the court must hold a hearing to determine whether the petitioner has made a prima facie showing that the petitioner is entitled to relief.  (§ 1172.6, subd. (c).)  If the petitioner makes that showing, the court must issue an order to show cause and hold an evidentiary hearing to

9

determine whether to vacate the attempted murder or murder convictions and resentence the petitioner on any remaining counts.  (*Id*., subds. (c), (d)(1).)

In deciding whether a petitioner has made a prima facie showing for relief under section 1172.6, " ' "the court takes petitioner's factual allegations as true and makes a preliminary assessment regarding whether the petitioner would be entitled to relief if his or her factual allegations were proved.  If so, the court must issue an order to show cause." ' " (*Lewis*, *supra*, 11 Cal.5th at p. 971; see *Curiel*, *supra*, 15 Cal.5th at p. 460.)  The court may consider the record of conviction, which will "necessarily inform the trial court's prima facie inquiry under section [1172.6], allowing the court to distinguish petitions with potential merit from those that are clearly meritless." (*Lewis*, at p. 971; see *Curiel*, at pp. 463-464.)  "In reviewing any part of the record of conviction at this preliminary juncture, a trial court should not engage in 'factfinding involving the weighing of evidence or the exercise of discretion.' " (*Lewis*, at p. 972; see *People v. Eynon* (2021) 68 Cal.App.5th 967, 975.)

"Nevertheless, the court may appropriately deny a petition at the prima facie stage if the petitioner is ineligible for relief *as a matter of law*.  ' "[I]f the record, including the court's own documents, 'contain[s] facts refuting the allegations made in the petition,' then 'the court is justified in making a credibility determination adverse to the petitioner,' " ' thereby deeming the petitioner ineligible." (*People v. Harden* (2022) 81 Cal.App.5th 45, 52; see *Curiel*, *supra*, 15 Cal.5th at p. 460; *Lewis*, *supra*, 11 Cal.5th at p. 971.)  "We review de novo whether the trial court conducted a proper inquiry under section 1172.6, subdivision (c)." (*People v. Williams* (2022) 86 Cal.App.5th 1244, 1251; see *People*

*v. Lopez* (2022) 78 Cal.App.5th 1, 14 [denial at the prima facie stage "is appropriate only if the record of conviction demonstrates that the petitioner is ineligible for relief as a matter of law," which "is a purely legal conclusion . . . we review de novo"].)

## B.    *The Superior Court Did Not Err by Denying Debato's Section 1172.6 Petition*

The trial court instructed the jury on two theories of liability for both first degree murder and willful, deliberate and premeditated attempted murder: (1) direct perpetrator (CALJIC Nos. 8.20, 8.25.1, 8.66-8.67) and (2) direct aiding and abetting (CALJIC Nos. 3.00-3.01).  The court did not instruct the jury on felony murder or the natural and probable consequences doctrine.

Debato asserts that "[t]he instructions, as a whole, permitted the jury to convict [him] as an aider and abettor without finding that he acted with malice.  The instructions therefore failed to 'conclusively negate' the possibility that the jury convicted based upon a theory of imputed malice."  However, the jury instructions and verdicts conclusively demonstrate that the jury did not convict Debato on a now-invalid theory of imputed malice.

### 1.    *Debato's convictions for attempted murder are ineligible for resentencing*

As discussed, SB 1437 and SB 775 eliminated the natural and probable consequences doctrine as it relates to attempted murder.  (*People v. Sanchez* (2022) 75 Cal.App.5th 191, 193 [SB 775 "clarified SB 1437 by amending section [1172.6] to make clear the natural and probable consequences doctrine no longer supplies accomplice liability to attempted murder"].)  Section 1172.6 relief is available *only* for persons whose convictions for

11

attempted murder could have been based on the natural and probable consequences doctrine. (§ 1172.6, subd. (a) ["A person convicted of . . . attempted murder under the natural and probable consequences doctrine . . . may file a petition"]; *Coley*, *supra*, 77 Cal.App.5th at p. 548 [section 1172.6, subdivision (a)(1) "applies by its terms only to attempted murders based on the natural and probable consequences doctrine"]; *People v. Lovejoy* (2024) 101 Cal.App.5th 860, 865 ["[f]ollowing the passage of [SB] 775 in 2022, it is now clear that defendants . . . convicted of attempted murder are potentially eligible for relief under section 1172.6 if the conviction could have been based on the natural and probable consequences doctrine"].)

Because the trial court did not instruct Debato's jury on the natural and probable consequences doctrine, he is not eligible for relief under section 1172.6 on his attempted murder convictions as a matter of law. (See *Coley*, *supra*, 77 Cal.App.5th at p. 548 ["The jurors in this case were not instructed on [the natural and probable consequences] doctrine. . . . The court was not required to grant resentencing on this [attempted murder] count."]; *People v. Offley* (2020) 48 Cal.App.5th 588, 599 ["if the jury did not receive an instruction on the natural and probable consequences doctrine, the jury could not have convicted the defendant on that basis, and the petition should be summarily denied"].)

2. *Debato's conviction for first degree murder is ineligible for resentencing*

Debato is also ineligible for relief as to his first degree murder conviction because the jury instructions on direct aiding and abetting foreclose the possibility that the jury convicted Debato of murder based on imputed malice. Former CALJIC No. 3.01 required the jury to find the aider and abettor "by act or

12

advice" aided the commission of the crime "with knowledge of the unlawful purpose of the perpetrator" and "with the intent or purpose of . . . encouraging . . . the commission of the crime." When the aiding and abetting instruction given to a jury includes such language, the jury may find a defendant guilty under this theory only if it finds the aider and abettor shares the perpetrator's specific intent.  (*People v. McCoy* (2001) 25 Cal.4th 1111, 1118 (*McCoy*) [the aider and abettor shares the specific intent of the perpetrator " 'when the accomplice "knows the full extent of the perpetrator's criminal purpose and gives aid or encouragement with the intent or purpose of facilitating the perpetrator's commission of the crime" ' "].)

Here, the instructions on first degree murder required the perpetrator to harbor "express malice aforethought" (CALJIC No. 8.20 [standard first degree murder]) and "inten[t] to inflict death" (CALJIC No. 8.25.1 [drive-by murder]).  Thus, whether the jury found Debato guilty as the direct perpetrator or the aider and abettor, it necessarily found Debato harbored express malice aforethought, making him ineligible for resentencing.  (*Gentile*, *supra*, 10 Cal.5th at p. 848 [SB 1437 "does not eliminate direct aiding and abetting liability for murder because a direct aider and abettor to murder must possess malice aforethought"]; *People v. Lopez* (2024) 99 Cal.App.5th 1242, 1248 ["An accomplice who directly aids and abets the perpetrator in committing murder is liable for murder [following SB 1437] just as he or she was liable" before its enactment].)

Debato argues the record of conviction "does not conclusively eliminate the possibility" Debato was convicted of first degree murder "based upon a theory of imputed malice." Specifically, Debato points to three jury instructions that he

13

claims "permitted the jury to convict [Debato] as an aider and abettor without finding that he acted with malice": CALJIC Nos. 3.01, 3.00 and 8.25.1.[5] We are not persuaded by his arguments and conclude none of these instructions permitted the jury to convict Debato on a now-invalid theory of liability.

Starting with former CALJIC No. 3.01, the instruction required the jury to find the aider and abettor encouraged "the crime," intended to encourage "the crime," and knew the perpetrator's "unlawful purpose." Debato argues that by failing to define "the crime" as murder, the jury could have found him guilty of aiding and abetting "any act." However, the only crimes charged were murder and attempted murder. And, as the jury was instructed, for those crimes, the perpetrator had to have either "express malice aforethought" (CALJIC No. 8.20 [first degree murder]), the "inten[t] to inflict death" (CALJIC No. 8.25.1 [drive-by murder]), or "a specific intent to kill"

_____

[5] Debato relies on *People v. Langi* (2022) 73 Cal.App.5th 972 (*Langi*) to argue the jury instructions failed to rule out the possibility the jury convicted Debato based on a theory of imputed malice. However, Debato's reliance on *Langi* is misplaced. The *Langi* court's analysis and conclusion depended on Langi having been convicted of second degree murder based on a theory of aiding and abetting implied malice murder. (*Id.* at p. 981.) Here, the jury convicted Debato of first degree murder and premeditated attempted murder, neither of which could be based on implied malice. Thus, the concern in *Langi* is not present here. (See *People v. Lee, supra,* 95 Cal.App.5th at p. 1191 ["We note in *Langi* . . . the concern centered on the fact that the direct perpetrator of an implied malice murder . . . need not harbor an intent to kill. [Citation.] That concern is not present [in this case], which required the perpetrator of the attempted murder to 'harbor[] express malice aforethought' "].)

14

(CALJIC No. 8.66 [attempted murder]).  Because the jury was not instructed on felony murder or the natural and probable consequences doctrine, the jury would have no basis to believe that it could find Debato guilty as an aider and abettor based on his commission of some other non-charged target offense.  Thus, the jury could not have found Debato "knowingly and intentionally help[ed] another commit an unlawful killing without acting with malice" because "[t]he only unlawful purpose charged here was unlawful killing" or attempted unlawful killing. (*McCoy*, *supra*, 25 Cal.4th at p. 1123; *People v. Cortes* (2022) 75 Cal.App.5th 198, 206 [where jury was instructed on liability as either a direct perpetrator or direct aider and abettor, petitioner's "mere speculation that the jurors convicted him of murder and attempted murder because he committed some other unidentified and uncharged crime, contrary to the trial court's instructions, does not overcome the presumption that the jury properly performed its duty"].)

Turning to former CALJIC No. 3.00, the instruction told the jury that "principals in the crime," including those who "directly" commit the crime and those who "aid and abet" the crime, are "equally guilty."  Debato claims the language "equally guilty" is "ambiguous" and "permitt[ed] the jury to convict based on the intent of the perpetrator," not on Debato's own intent.  Our Supreme Court in *People v. Johnson* (2016) 62 Cal.4th 600, 640-641 stated that the reference in former CALJIC No. 3.00 to principals being "equally guilty" "generally stated a correct rule of law," but "the instruction could be misleading" if the jury could have understood the "equally guilty" language "to allow them to base defendant's liability for . . . murder on the mental state of the actual shooter, rather than on defendant's own mental state

in aiding and abetting the killing."[6]  Notwithstanding the instruction's potential to mislead in some circumstances, there is no possibility the jury here could have convicted Debato without finding Debato himself harbored express malice.  As noted, the jury was instructed on direct aiding and abetting with CALJIC No. 3.01.  Thus, the jury had to find Debato himself shared the perpetrator's intent.  (See *People v. Amezcua Flores* (2019) 6 Cal.5th 886, 917-919 [any potential misdirection from the "equally guilty" language in CALJIC No. 3.00 was cured by CALJIC No. 3.01 because CALJIC No. 3.01's "requirement that the aider/abettor know of the perpetrator's unlawful purpose, intend to facilitate that purpose, and do an act that assists or facilitates the purpose, sufficiently explained the required mens rea"]; *Johnson*, at pp. 640-641 [nothing in the jury instructions suggested that the jurors may have believed the "equally guilty" language in former CALCRIM No. 400 required them to determine defendant's liability based on the perpetrator's mental state, rather than defendant's own mental state, because the court instructed the jury with CALCRIM No. 401, "which sets out the requirements for establishing aider and abettor liability" and "cleared up any ambiguity arguably presented by former CALCRIM No. 400"].)

Finally, CALJIC No. 8.25.1 instructed the jury that murder is of the first degree when it is "perpetrated by means of

---

[6]   In 2010, the Judicial Council modified former CALJIC No. 3.00, "making the 'equally guilty' language optional."  (*People v. Johnson*, *supra*, 62 Cal.4th at p. 640, fn. 5.)  The Judicial Council also revised former CALCRIM No. 4.00, the analogous CALCRIM instruction, "by removing the word 'equally' from the phrase 'equally guilty.' "  (*Id*. at p. 640.)

16

discharging a firearm from a motor vehicle" and "the perpetrator specifically intended to inflict death." Debato argues that by referring only to "the perpetrator," "the instruction did not require the jury to find that the aider and abettor intended to inflict death." But, as noted, the jury could only convict Debato as an aider and abettor of drive-by murder if, as instructed with CALJIC No. 3.01, Debato shared the perpetrator's intent—which, in a drive-by murder is "specific[] inten[t] to inflict death." (Former CALJIC No. 8.25.1; see *McCoy*, *supra*, 25 Cal.4th at p. 1118.)

In sum, because the jury instructions given in Debato's case required the jury to find Debato harbored an intent to kill, his convictions are ineligible for relief as a matter of law. The court did not err in denying his petition without issuing an order to show cause.

## DISPOSITION

The order denying Debato's petition for resentencing is affirmed.

STONE, J.

We concur:

FEUER, Acting, P. J.          PULOS, J. *

---

* Judge of the San Diego County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

17